UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

PETRINA PRICE,

                Plaintiff,

    -vs-                           **No. 1:14-CV-00756 (MAT)**
                                              **DECISION AND ORDER**
CAROLYN W. COLVIN, ACTING
COMMISSIONER OF SOCIAL SECURITY,
                Defendant.

---

**I.   Introduction**

Represented by counsel, Petrina Price ("plaintiff") brings this action pursuant to Title XVI of the Social Security Act ("the Act"), seeking review of the final decision of the Commissioner of Social Security ("the Commissioner") denying her application for supplemental security income ("SSI"). The Court has jurisdiction over this matter pursuant to 42 U.S.C. § 405(g). Presently before the Court are the parties' cross-motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. For the reasons discussed below, the Commissioner's motion is granted.

**II.   Procedural History**

The record reveals that in August 2011, plaintiff filed an application for SSI, alleging disability beginning August 1, 2010. After her application was denied, plaintiff requested a hearing, which was held before administrative law judge Donald McDougall ("the ALJ") on March 1, 2013. The ALJ issued an unfavorable decision on March 21, 2013. The Appeals Council denied review of that decision and this timely action followed.

**III. Summary of the Evidence**

The record reveals that plaintiff suffers from type one diabetes mellitus, for which she has been prescribed insulin treatment. There is no indication from the record that such treatment was ineffective; rather, plaintiff received treatment for diabetes on an episodic basis when her condition was uncontrolled. Specifically, plaintiff was treated by the Erie County Medical Center ("ECMC") emergency department or clinic on eight occasions from October 18, 2009 through December 20, 2011. From September 29, 2012 through October 1, 2012, plaintiff was admitted to Sisters of Charity Hospital for diabetic ketoacidosis (a complication wherein the body produces excess blood acids) and urinary tract infection. Plaintiff was treated at the Sisters of Charity emergency department on November 23, 2012, again for diabetic ketoacidosis.

The hospital records repeatedly state that plaintiff's medication noncompliance was the reason for her treatment for diabetes. See, e.g., T. 241, 296, 298, 306, 308, 309, 315, 326, 327. Although the records reference mental health diagnoses, including PTSD and depression, none of the records state that plaintiff was noncompliant with diabetes treatment by reason of her mental health conditions, with the exception of one record dated September 1, 2011, which noted that plaintiff's diabetes was "uncontrolled due to multiple stressors," with no elucidation. T. 296.

The records indicate that plaintiff's diabetic complications were related to alcohol use and/or abuse. See, e.g., T. 241 (noting that toxicology was positive for alcohol (ETOH)). On September 28, 2011, at a mental health visit with a counselor at Kaleida Health System, plaintiff "admit[ted] there [was] a problem with her alcohol use [and] state[d] she [had] attempted to cut down from quart liquor per night to two peach schnapps drinks." T. 328. The counselor noted that "this [was] also problematic due to sugar content and her diabetes" and that substance abuse was a "barrier to successful meds." Id. Plaintiff indicated that she was "ambivalent" about ceasing substance abuse. Id.

Plaintiff received mental health treatment beginning in August 2011. She reported anxiety as a result of being robbed at gunpoint in 2009. It was noted that she actively used marijuana and alcohol to fall asleep at night, and that her diabetes was "very much" out of control. T. 332. Plaintiff continued treatment through December 2012. The records contain repeated references to substance abuse. From February 2012 through December 2012, when plaintiff treated with counselors on over fifteen occasions, she reported "manageable" symptoms of depression. See T. 419-509.

In a January 27, 2011 consulting psychiatric examination performed at the request of the state agency, psychologist Dr. Sandra Jensen noted that a mental status examination ("MSE") was unremarkable except for a flat affect. Dr. Jensen opined that plaintiff could follow and understand simple instructions, perform

3

simple tasks independently, maintain attention and concentration, maintain a regular schedule, learn new tasks, perform complex tasks independently, make appropriate decisions, relate adequately with others, and appropriately deal with stress without any difficulties.

Also on January 27, 2011, plaintiff underwent an internal medicine examination performed by consulting physician Dr. Donna Miller. Based on an unremarkable physical examination, Dr. Miller opined that plaintiff had no significant physical limitations.

Plaintiff's treating physician from ECMC, Dr. Patta, submitted a diabetes mellitus residual functional capacity ("RFC") questionnaire on October 27, 2011. Dr. Patta wrote that plaintiff's FSG (finger stick glucose) was "very uncontrolled." T. 321. In response to a question asking whether "emotional factors contribute to the severity" of plaintiff's symptoms and functional limitations, Dr. Patta responded yes. Id. When asked to check boxes indicating "any psychological conditions affecting" plaintiff's physical condition, Dr. Patta checked anxiety and depression, and added "social stressors." Id. Dr. Patta responded that plaintiff's impairments were reasonably consistent with the symptoms and limitations described in the opinion only "to some extent." T. 322.

Dr. Patta opined that plaintiff's symptoms would interfere with the attention and concentration needed to perform even simple work tasks frequently, but that she was capable of low stress jobs; plaintiff could sit for more than two hours "if sugars [were]

4

good"; she could stand one to two hours, sit about two hours, and would need periods of walking around in an eight-hour workday; plaintiff would need to take at least two to three unscheduled breaks in a workday, depending on her sugar levels; she could lift up to 20 pounds frequently and frequently twist, stoop, and crouch/squat; and she must avoid concentrated exposure to all environmental irritants. Although Dr. Patta responded that plaintiff did not have significant limitations in reaching, handling, or fingering, Dr. Patta nevertheless opined that plaintiff would be able to reach, handle, or finger only 20 percent of the workday. Finally, Dr. Patta opined that plaintiff would have "good days" and "bad days," and that she would miss more than four days per month as a result of her condition. T. 324. When asked whether plaintiff had "any other limitations (such as psychological limitations, . . .) that would affect [her] ability to work at a regular job on a sustained basis," Dr. Patta responded "sugars being uncontrolled." Id.

On December 20, 2011, psychologist Dr. Renee Baskin completed a second consulting psychiatric evaluation at the request of the state agency. On MSE, Dr. Baskin noted that plaintiff was "somewhat anxious and tense"; mood was dysthymic; attention, concentration, and recent and remote memory skills were "mildly impaired due to some anxiety or nervousness"; and intellectual functioning was in the low average range. T. 359. Dr. Baskin opined that plaintiff "would have minimal to no limitations being able to follow and

5

understand simple directions and instructions, perform simple tasks independently, maintain attention and concentration, [and] learn new tasks with supervision." T. 360. "She would have moderate limitations being able to maintain a regular schedule, make appropriate decision[s], relate adequately with others and appropriately deal with stress." Id.

Also on December 20, 2011, plaintiff underwent another internal medicine consulting examination, which was performed by Dr. Guatam Arora. Plaintiff's physical examination was unremarkable, but Dr. Arora stated that plaintiff had "moderate limitation of physical activities resulting from uncontrolled diabetes." T. 355.

**IV. The ALJ's Decision**

At step one of the five-step sequential evaluation, see 20 C.F.R. § 416.920, the ALJ found that plaintiff had not engaged in substantial gainful activity since August 9, 2011, the application date. At step two, the ALJ found that plaintiff suffered from the severe impairments of diabetes mellitus and posttraumatic stress disorder ("PTSD"). At step three, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or medically equaled a listed impairment.

Before proceeding to step four, the ALJ found that plaintiff retained the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. §§ 416.967(b), with the following nonexertional limitations: she would need to be "able to take a

6

minute or so to check her blood sugar levels about four times a day"; she could not have interaction with the general public and no more than occasional [contact] with co-workers or supervisors; and she was limited to a job involving simple, routine work, with no detailed or complex instructions, no more than occasional requirement to make decisions, and no more than occasional changes in the work setting. T. 14. At step four, the ALJ found that plaintiff had no past relevant work. At step five, the ALJ found that considering plaintiff's age, education, work experience, and RFC, jobs existed in the national economy which she could perform.

**V. Discussion**

A district court may set aside the Commissioner's determination that a claimant is not disabled only if the factual findings are not supported by "substantial evidence" or if the decision is based on legal error. 42 U.S.C. § 405(g); see also <u>Green-Younger v. Barnhart</u>, 335 F.3d 99, 105-06 (2d Cir. 2003). "Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" <u>Shaw v. Chater</u>, 221 F.3d 126, 131 (2d Cir. 2000).

**A. Noncompliance with Treatment**

Plaintiff contends that the ALJ failed to adequately assess the effect of her mental health conditions on her noncompliance with treatment for type one diabetes mellitus. Plaintiff argues that, pursuant to SSR 82-59, the ALJ was obligated to consider whether plaintiff was justified in failing to follow prescribed

7

diabetes treatment. Plaintiff claims that her noncompliance was justified because it was due to mental health symptoms. The Commissioner contends that the ALJ did not have an obligation to follow the requirements of SSR 82-59 under the circumstances of this case. For the reasons set forth below, the Court agrees with the Commissioner.

Initially, the Court notes that Dr. Patta's opinion does not clearly indicate that she believed plaintiff's mental health symptoms to be the underlying reason for plaintiff's *noncompliance* with diabetes treatment. As discussed above, Dr. Patta responded "yes" to a question asking whether "emotional factors *contribute to the severity*" of plaintiff's symptoms and functional limitations. T. 321 (emphasis added). When asked to check boxes indicating "any psychological conditions affecting" plaintiff's physical condition, Dr. Patta checked anxiety and depression, and added "social stressors." Id. Dr. Patta did not specifically opine that plaintiff's mental health symptoms associated with anxiety, depression, and social stressors caused plaintiff to fail to comply with diabetes treatment. To the extent that Dr. Patta's opinion did intend this meaning, however, the Court finds that, as discussed below, such a conclusion was not supported by substantial evidence in the record.

SSR 82-59, which explains the application of 20 C.F.R. § 416.930, provides that the "SSA may make a determination that an individual has failed to follow prescribed treatment *only* where"

8

certain conditions are met. SSR 82-59, 1982 WL 31384, *1 (Jan. 1, 1982) (emphasis added). The first requirement is that the evidence must "establish[] that the individual's impairment precludes engaging in any substantial gainful activity (SGA)." Id. "Where SSA makes a determination of 'failure,' a determination must also be made as to whether or not failure to follow prescribed treatment is justifiable." Id. Thus, "SSR 82–59 normally applies to a claimant's eligibility for benefits *after a finding of disability has been made*." Grubb v. Apfel, 2003 WL 23009266, *5 (S .D.N.Y. Dec. 22, 2003) (emphasis added).

In certain cases, however, courts have remanded where the ALJ's decision was unclear as to "whether the ALJ believed plaintiff's [medical condition] to be a remediable impairment that plaintiff failed to remedy without justifiable cause or whether the ALJ *simply believed the [medical condition] was not severe enough to be considered disabling*." Bolden v. Comm'r of Soc. Sec., 556 F. Supp. 2d 152, 166 (E.D.N.Y. 2007) (emphasis added); see Belen v. Astrue, 2011 WL 2748687, *13 (S.D.N.Y. July 12, 2011) (remanding where the ALJ's decision "[did] not make clear what role [the plaintiff's] failure to take her prescribed medication played in the ALJ's decision, nor [did] it address the three-part test inherent in SSR 82-59").

Plaintiff argues that the ALJ used plaintiff's noncompliance with diabetes treatment to deny her disability benefits to which she was otherwise entitled. In support of this argument, plaintiff

9

points out the ALJ's statement that Dr. Patta's opinion "would allow for no work." T. 16. Thus, plaintiff's argument supposes that the ALJ *agreed* with Dr. Patta that plaintiff suffered the limitations delineated in Dr. Patta's opinion, but found that plaintiff's noncompliance with treatment was not justified by any good reason. Plaintiff cites <u>Bolden</u> and <u>Belen</u> in support of her argument.

Here, however, in contrast to <u>Bolden</u> and <u>Belen</u>, the ALJ made clear that he found the diabetes not to be a disabling impairment in the first place. In rejecting Dr. Patta's opinion, the ALJ noted that: (1) Dr. Patta's restrictive opinion was not supported by the medical evidence from ECMC or other objective evidence; (2) plaintiff's poor control of diabetes was due to her non-compliance with treatment; (3) the record did not support chronic complications associated with diabetes;[1] (4) there was no evidence to support that plaintiff would need unscheduled breaks, suffered environment restrictions, or that she would be absent more than four days per month; and (5) Dr. Patta's opinion was primarily based on plaintiff's subjective complaints.

In this case, therefore, the ALJ did not find that plaintiff had a disabling impairment based on the substantial evidence of record. Thus, this case is not analogous to <u>Borden</u> and <u>Bellen</u>, in

---

[1] As to this finding, the Court notes that the record indicates that when plaintiff complied with treatment, her condition improved. See, e.g., T. 530 (noting that plaintiff left hospital without waiting for discharge, her "sugars [had] improved," and plaintiff "[felt] like she [was] keeping good control of it").

10

which the courts specifically noted that it was *unclear* whether the ALJ considered the plaintiffs' conditions to be disabling in the absence of compliance with treatment. Accordingly, the Court finds that the ALJ was not obligated to undertake analysis set forth in SSR 82-59 because the first requirement was not met: the "evidence [did not] establish[] that [plaintiff's] impairment *preclude[d] engaging in any substantial gainful activity*." SSR 82-59, 1982 WL 31384, at *1; see also Lindner ex rel. N.M.R. v. Colvin, 2015 WL 5156877, *5 (W.D.N.Y. Sept. 2, 2015) ("[SSR 82-59] addresses a scenario in which a claimant, *who suffers from a disabling impairment*, fails to follow a prescribed treatment regimen that would restore his or her ability to work. SSR 82-59 is not applicable to the analysis of this case, because the ALJ's finding that N.M.R. did not suffer from disabling impairments was supported by substantial evidence.") (emphasis in original).

In other words, although the ALJ recognized that Dr. Patta's opinion would result in a finding of disabled if fully credited, the ALJ made clear that he did not agree that the restrictive limitations opined by Dr. Patta were supported by the record. The ALJ's conclusion in this regard is supported by substantial evidence. First, as the ALJ found, the restrictive limitations found by Dr. Patta are not supported by substantial evidence of record, including records from ECMC. Those records reveal that plaintiff was treated for diabetes on an episodic basis, when her diabetes was uncontrolled, and do not state any findings which

11

would translate into the limitations opined by Dr. Patta's opinion. Second, the treatment notes repeatedly state that plaintiff's poorly controlled diabetes was a result of noncompliance with treatment, but the bulk of the records do not support a conclusion that the noncompliance was a result of symptoms stemming from PTSD or depression. Rather, and as the ALJ noted, plaintiff's mental health treatment notes indicated that, on a majority of occasions, plaintiff reported her PTSD and depression symptoms to be manageable. Additionally, the record indicates that when plaintiff complied with diabetes treatment, her condition improved. The ALJ also gave weight to the consulting opinions, which provided further substantial evidence supporting his decision to reject Dr. Patta's more restrictive opinion.[2]

The Court also finds that, to the extent that the ALJ considered plaintiff's noncompliance with diabetes treatment in evaluating plaintiff's credibility, he did

so properly. Although SSR 96-7p provides that in evaluating credibility an ALJ must consider whether a plaintiff had "good reason" for failing to comply with treatment, as discussed above, this record did not indicate that plaintiff failed to comply with

---

[2] The Court notes plaintiff's argument that the ALJ failed to follow the treating physician rule with respect to Dr. Patta's opinion. For the reasons just summarized, the Court concludes that the ALJ provided good reasons, consistent with the factors set forth in the regulations, for rejecting Dr. Patta's opinion. See, e.g., Smith v. Colvin, 2013 WL 6504789, *11 (E.D.N.Y. Dec. 11, 2013) (noting that the district court must consider "whether the ALJ provided "good reasons" for discounting [a treating physician's] opinions based on the factors set forth in the regulations") Additionally, even Dr. Patta noted that plaintiff's impairments were consistent with the limitations Dr. Patta opined only to "some extent." T. 322.

12

treatment as a result of her severe mental health impairments. Plaintiff argues that "[d]ue to [her] depression and PTSD, she lacked the ability to think and act rationally in making decisions about maintaining her diabetes." Doc. 11-1 at 19 (citing Sharp v. Bowen, 705 F. Supp. 1111, 1124 (W.D. Pa. 1989), which noted that "[a]n individual with a severe mental impairment quite likely lacks the capacity to be 'reasonable,'" and "that individual may not have the same capacity to assess the risks and benefits of prescribed treatment as someone who is not affected by such an impairment").

However, as noted above, at most of plaintiff's mental health treatment sessions — which did not commence until September 2011 although plaintiff's PTSD stemmed from an event which occurred 2009 – plaintiff reported that her symptoms due to mental health conditions were manageable. Moreover, although Dr. Patta responded that plaintiff's mental health conditions affected the severity of her physical conditions, Dr. Patta did not clearly state that plaintiff's symptoms stemming from PTSD or depression resulted in her diabetes treatment noncompliance. Thus, the Court finds that the ALJ did not err in assessing plaintiff's credibility when he considered her noncompliance with treatment. See, e.g., Taylor v. Astrue, 2010 WL 7865031, *11 (D. Conn. Aug. 31, 2010)(holding that a claimant's failure to adhere to prescribed treatment, as well as gaps in treatment, are relevant considerations in the assessment of credibility).

13

**B.   Findings at Steps Four and Five**

Plaintiff contends that the ALJ's RFC finding did not adequately account for Dr. Baskin's opinion that plaintiff had moderate limitations in maintaining a regular schedule and dealing with stress. Significantly, however, Dr. Baskin also opined that plaintiff "would have minimal to no limitations being able to follow and understand simple directions and instructions, perform simple tasks independently, maintain attention and concentration, [and] learn new tasks with supervision." T. 360.

The ALJ gave weight to Dr. Baskin's opinion, finding that it was consistent with substantial evidence of record. The RFC finding accounted for nonexertional limitations including occasional interaction with the public, coworkers, and supervisors. The RFC finding also limited plaintiff to simple, routine work with no more than occasional requirement to make decisions and no more than occasional changes in the work setting. The Court finds that, based on the record in this case, these limitations adequately accounted for plaintiff's difficulty handling stress. See, e.g., Tatum v. Comm'r of Soc. Sec., 2016 WL 770206, *6 (N.D.N.Y. Feb. 2, 2016), report and recommendation adopted sub nom. Tatum v. Colvin, 2016 WL 796068 (N.D.N.Y. Feb. 23, 2016) (holding that "the ALJ did not err in failing to specifically account for [p]laintiff's difficulty in dealing with stress because the ALJ relied on [the consulting examiner's] opinion that [p]laintiff could perform simple work despite this difficulty") (citing Patterson v. Astrue, 2013 WL

14

638617, *9-11 (N.D.N.Y. Jan. 24, 2013) report and recommendation adopted, 2013 WL 592123 (N.D.N.Y. Feb. 14, 2013) (finding the ALJ did not err in limiting plaintiff to simple, routine, repetitive tasks where the consultative examiner determined that plaintiff's difficulty handling stress would not preclude plaintiff from undertaking such tasks)).

It is well-established that "the ALJ's RFC finding need not track any one medical opinion." O'Neil v. Colvin, 2014 WL 5500662,*6 (W.D.N.Y. Oct. 30, 2014) (citing Matta v. Astrue, 508 F. App'x 53, 56 (2d Cir. 2013) (finding that although the ALJ's conclusion did not perfectly correspond with any of the opinions of medical sources, the ALJ was entitled to weigh all of the evidence available to make an RFC finding that was consistent with the record as a whole)). Upon a review of the ALJ's decision in conjunction with the administrative record, the Court finds that the RFC finding was supported by substantial evidence, which included not only Dr. Baskin's opinion, but the consulting opinion of Dr. Jensen (to which the ALJ also accorded weight) which opined that plaintiff had no limitations in maintaining a regular schedule or dealing with stress. Because the Court has concluded that the ALJ's RFC finding was supported by substantial evidence, the Court need not address plaintiff's further argument that the ALJ's questions to the vocational expert were unsupported by substantial evidence.

## VI. Conclusion

For the foregoing reasons, plaintiff's motion for judgment on the pleadings (doc. 11) is denied and the Commissioner's motion (doc. 17) is granted. The ALJ's finding that plaintiff was not disabled is supported by substantial evidence in the record, and accordingly, the complaint is dismissed in its entirety with prejudice. The Clerk of the Court is directed to close this case.

**SO ORDERED.**

**S/Michael A. Telesca**

HON. MICHAEL A. TELESCA
United States District Judge

Dated:   June 14, 2017
         Rochester, New York.